Good morning, your honors, and welcome to Alaska. My name is Rich Kirtner. I represent Matthew Henry in this case. I'll try to save a few minutes for the vote. Mr. Henry is a 53-year-old Alaskan who, like many Alaskans, enjoys and possesses firearms for recreational use and lawful purposes. Mr. Henry was a member of the United States Army. He was in the National Guard in Oregon before he moved to Alaska. He's been employed his entire adult life. And the last 15 years, he's worked at the Red Dog Mine in western Alaska while he owned a home here in the Anchorage area. In October of 2009, he was on medical leave for medical conditions. He had time on his hands. He had a garage that was more like a machine shop. And there, while he was on medical leave, he was tinkering with firearms and weapons, and he made a homemade machine. And that's the issue before us today. What is important to know about Mr. Henry is that he was not prohibited from having firearms. He didn't have a felony record. He did not have any drug or mental illness issues that would prohibit him from having weapons. He had this particular machine gun in his own home and not outside the home. He did not have any criminal purpose for having this particular weapon. He had it for recreational use in his mind, tinkering with it to make a machine gun and for self-defense, as he described. And he was not involved in any kind of commercial activity with this firearm or any other. So his prosecution under 18 U.S.C. 922.0 brings three issues before this court. And the first one is the impact of the case of District of Columbia v. Heller. Of course, that's a new landscape that we are now navigating after that decision of the Second Amendment being an individual right. And it's our position that the Second Amendment protects law-abiding citizens who are not prohibited from possessing a machine gun, a homemade machine gun, for a lawful purpose in their own home. And that's the position that I think this court needs to decide, maybe ultimately I think the U.S. Supreme Court needs to decide. Can I ask you this question? Yes. Counsel, I respect your argument. Your position certainly is one that is going to have to be answered in due course. But you're also familiar, of course, with some of the language in Heller, McDonald, and some of the cases that have followed that suggest that the earlier Miller case, talking about the concept of having a machine gun, would be, in quotes, startling, in quotes. And the Supreme Court in Heller did suggest that nothing that they said in that case could be interpreted as basically doing away with the prohibitions on certain dangerous and unusual weapons. Why doesn't that give us the direction that we need, since we are on uncharted seas to some degree? Well, we are. And I think that, of course, Justice Scalia's decision in Heller is a long decision, and it really, I think, speaks to both sides of the issue. In one particular, and also since Miller is an important case from 1939 on this issue, the Heller court discussed that. I'd like to refer the court to the Heller decision at 554 U.S. 623 and 624, where Justice Scalia says, It is particularly wrong-headed to rely on Miller for more than what it said. The case did not even purport to be a thorough examination of the Second Amendment. And Justice Scalia goes on to point out that in Miller, the defendants did not appear in the case before the Supreme Court. They filed no briefs. And the only position heard in Miller in 1939 was from the government. So Justice Scalia goes on later to say, We dare for Reed Miller to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes. Is it your position that having a machine gun in one's home fits into that description? Yes. And it's somewhat of a… Everyone would be excited about that. Well, it's somewhat of a learning experience for me about machine guns because I have not been a machine gun enthusiast. But I find out that many people who enjoy weapons enjoy machine guns for recreational purposes, not to commit crimes. I was surprised to see on the ATF… In their home? In their home. That's where they possess them. They fire submachine guns in their home? No, they possess them in their home and they're going to fire them out of range. Oh, I see. So not in the home, but outside the home. On the last time I checked the ATF website, there are over 240,000 machine guns registered in this country. So it enlightened me to the fact that there are many citizens who own machine guns for lawful purposes. And that's our position, that that's what the Second Amendment protects in this particular case. If I understand your position correctly, you're not addressing the fact that some people aren't even entitled to have machine guns in their home and perhaps elsewhere, but just have permits to do so. You're not talking about that. You're saying that there is a constitutional right under Heller to have a homemade machine gun in your home for constitutional purposes. That in the same sense that the District of Columbia was not entitled to bar Officer Heller from having a loaded firearm in his home, by the same token the state of Alaska and the government of the United States can't bar your client from having an operating homemade machine gun in his home as a constitutional right. Yes. And beyond that, though, it's also important to note that Mr. Henry could not have registered this gun because under the 922-0, the machine gun has to be lawfully possessed before 1986 to be registered. And since he was able to make this homemade machine gun, he couldn't register it. And so that's why this is the type of restriction and prohibition that would now offend the Second Amendment. Does that mean that all of the machine guns that you found were registered were registered or registrable because they had been owned prior to that date? Yes.  And so Mr. Henry was in a position where he couldn't register it in order to be legal. Now, I think the other thing to point out in Heller's decision is that it points out that the Second Amendment does not protect felons from possessing firearms. It does not protect the mentally ill from having firearms. It does not say that you can have firearms in government buildings or schools or particular places. It doesn't say that there can't be some type of regulations on the commercial sale of firearms. As I read Heller and that statement in Heller about not typically owned for lawful purposes and so on, it seems to me that at least a fair summary of what Justice Scalia was saying is unusual and unusually dangerous weapons can lawfully be forbidden. Yes. So it's okay to forbid someone, you probably would agree, consistent with the Second Amendment, to forbid someone from owning a bazooka. Yes, but not a machine gun. But then we're into a line-drawing question as to whether or not a machine gun is both unusual and unusually dangerous. The legislature has drawn that line. It's not just some local government like D.C. that we've got federal legislation to this effect. That's true, but that legislation was drawn before Heller and the Second Amendment. Jurisprudence came into effect, so that has to be balanced out. There have been some cases since Heller dealing with machine guns. Have any of them gone your way? Not, no, not that I know of. But they usually involve somebody who also has some prohibition from having a machine gun or is in some kind of commercial setting and things of that nature. I know there were a couple unpublished decisions in this circuit that may have addressed that, but I'd like to get to the second issue in this case, and this is the Commerce Court. Because this court decided in 2003 under Stewart, the first Stewart decision, that Commerce did not have the power to regulate homemade machine guns. Now, that was reversed in Stewart 2 because of the Gonzales case, but what we note in our briefs, a footnote in that, is that the Stewart 2 decision was based on the fact that the Second Amendment is not an individual right. You're, of course, absolutely correct. That is clearly wrong under Heller. But under the case law, how do we deal with that? You've frequently seen the citation in the Supreme Court says, you know, reversed on other grounds or affirmed on other grounds or whatever. The vast portion of Stewart has nothing to do with the concept of whether the Second Amendment is an individual right, which Heller did clarify. Why shouldn't we read Stewart 2, and Stewart 1 for that matter, to say that footnote is wrong? We ignore that footnote, but everything else remains the same. Well, you can read it that way, but one thing that you have to, I think, recognize in Stewart 2 being wrong, is the standard of review. And this is what I, we also cite the Noordijk versus King. Well, with respect, counsel, the standard of review is obviously very important if the Second Amendment applies. But that was, of course, the first question we were talking about. Do we even get it? Arguendo. You're a brilliant lawyer. There's no telling what we do here. If for just discussion purposes, we decided that the Second Amendment, as we understand the Supreme Court to have construed it, does not cover your client, we wouldn't really need to get to the issue of the standard of review, would we? No, and it's sort of a chicken and egg kind of analysis. Or giraffe. Giraffes are lions. But I think that it's important in this particular case because I think it does apply to a homemade machine, as Stewart first cited, in that the standard of review is like the third issue that we presented because in this district, the magistrate judge first does an analysis on a motion to dismiss. And the magistrate judge, Roberts, wrote an opinion granting the motion to dismiss and using a standard of high scrutiny because of Heller and McDonald. Then Judge Holland said, I disagree with that, and we shouldn't use that standard of, we should use a rational basis standard to look at Mr. Henry's motion to dismiss. It's our position that Judge Holland should have used under the Second Amendment, under Heller and McDonald, the standard of heightened scrutiny. And I rely on the decision that came out from this court, I think a few months after Judge Holland's decision, Nordyke v. King. I'm on that panel, and that case was vacated. And we don't have any case law right now that tells what the standard of scrutiny is because we don't have any cases so far that deal with a factual situation where we have found there to be a Second Amendment right. You remember in the Nordyke case, we had a county fair situation, and the parties changed the facts all around, and we didn't have the controversy anymore, and it's gone. So we don't really have a standard here. And I guess my concern, I can understand why you would like us to articulate a standard, but I'm not sure how we can do that until we have a factual situation where we say, okay, clearly the Supreme Court meant the Second Amendment covered this. That being the case, then we decide what level of scrutiny do we apply to the factual situation. Isn't that really what we're supposed to be doing? That's correct, and I think that the answer is that under the specific facts of this case, where there was the lawful possession in one's own home of a homemade machine gun, that that fits under the Second Amendment, and the standard should be heightened scrutiny. And that means that under Mr. Henry's conviction, it violates not only the Second Amendment but the Commerce Clause. And so that's what we're asking the court to do. Help me with the last part of that. I get your point on the first part. How does the standard of scrutiny bear on whether the Commerce Clause applies? Going back to Stuart 1, I think what we have to do is Heller now switches us back. Gonzales took us to Stuart 2, and now I think Heller and McDonald take us back to Stuart 1 in the underdata analysis. Do you think Heller and McDonald overrule Reich? No, I think it's because Reich wasn't a Second Amendment. No, I understand that, but it's a Commerce Clause case. Yes. You're making, if I understand it, two arguments. One is the Second Amendment and the second is the Commerce Clause. Yes. They're sort of independent, are they not? Yes. Okay. So I'm saying, how do Heller and McDonald bear on the constitutionality of the Commerce Clause, which is, according to Stuart 2, controlled by Reich? Yes, because I think there's a distinction between a homing machine gun, which the court said did not affect interstate commerce, and the marijuana case that said it did. With that, I'd just like... We'll make sure you get a chance to respond, so don't be anxious about your time. It seems to me your Commerce Clause argument might lead us to a conclusion, if we agree with you, that felon and possession laws are unconstitutional. Are you making that argument? No, I'm not. Are you willing to go so far? So if felon and possession prohibitions are constitutional under the Commerce Clause, what's the difference? Because, I mean, it's our position on the facts of this case. This was somebody who was not prohibited, and we're not arguing that people should not be prohibited under certain circumstances from having firearms. But Mr. Henry was not, and in his own home, and for not any unlawful purposes. Yeah. I think he's protected, just like you... No, no, but I don't... I'm asking you about the Commerce Clause. Oh, the Commerce Clause. Felon and possession, we've had those statutes forever. Right. And your rationale, saying, well, the Second Amendment is special, and somehow the government's reach in a Second Amendment case under the Commerce Clause is not as great as it would be in non-Second Amendment cases. Okay, I've got felon and possession. There's nothing in the felon and possession statutes that requires a proof that the gun has traveled in interstate commerce. It's just felon and possession of a firearm, and you can violate the statute by possessing it in your own home. So how do you distinguish felon and possession statutes from the statute that you here claim is unconstitutional? Well, first of all, to be a federal felon and possession charge, it has to be in interstate commerce, and of course, except for homemade weapons, all guns have to come into Alaska through interstate commerce. But I think that the distinction is if this were a felon and possession case, which that has been denied on a number of times, that's strictly a Second Amendment issue. I think that the homemade machine gun for a person who's not prohibited, that's not only a Second Amendment issue, it's also a Commerce Clause. Okay. We've taken you over. We'll hear from the government, but we'll make sure you get a chance to respond. Thank you. Good morning, Your Honors. May it please the Court, my name is Joanne Farrington, and I work for the government in this case. And if you could keep your voice up, please. Okay. Mr. Henry was convicted pursuant to Section 922.0 for possession of a machine gun. Machine guns now are categorically prohibited under federal law unless they were legally possessed prior to the passage of 922.0. He argues that his possession of the machine gun is conduct that's protected by the Second Amendment under Heller. He also argues that Congress could not legitimately regulate his possession of the machine gun using its Commerce Clause powers because of the protection provided by Heller. And then he goes on to argue that the district court applied the wrong standard of review and that it should be heightened scrutiny also because his possession of the machine gun was protected by Heller. So thus all three arguments, although they are distinct, are intertwined and they all depend on a conclusion that the decision of the Supreme Court in Heller somehow gave protection to personal possession of the machine gun. That argument is just wrong. Heller makes it crystal clear, I think, that such an argument is, in the Court's own words, startling. It's an argument that does not fit within the scope of protection that Heller provided. Heller's test states that the Second Amendment protects only, and I quote, those weapons typically possessed by law-abiding citizens for lawful purposes. And the particular situation that Heller dealt with was the possession of handguns in the home for personal protection. In addition, I think that one can extrapolate that shotguns and rifles possessed for hunting are probably protected by the Second Amendment, although Heller didn't deal with that situation. But Heller also goes on to explicitly say that the Second Amendment does not protect possession of, quote-unquote, dangerous and unusual weapons. It referred back to the decision in Miller, which dealt with sawed-off shotguns, in which that was the standard, that there is no Second Amendment protection for such dangerous and unusual weapons. Counsel, your opposing counsel suggested, with respect to Stewart, and I suspect he would say the same with respect to Miller, that language about startling weapons and the like had to be considered, at least that's what I'm sitting to say, had to be considered in the context of the times when the Second Amendment was construed as applying, number one, only to the federal government, not to the states, and secondly, that it was not an individual right, but rather a militia-type right. Are we, when we construe Stewart II, maybe Stewart I, and certainly in the Supreme Court's 1939 Miller case, to view them differently, apply the language differently, because Heller has changed our understanding of the meaning of the Second Amendment? No, I don't think so, because I think that Stewart is a Commerce Clause decision. It's not a Second Amendment decision. Congress's powers are both granted and limited in different parts of the Constitution, and Congress may be limited in its ability to regulate certain types of firearms, and it may be limited because certain conduct does not have enough of an effect on interstate commerce or does not travel in interstate commerce, that sort of thing. But those two are independent sources of power and analysis. So for purposes of Stewart II, for example, I assume the government would take the position that, at least in our circuit, that the issue of whether this particular statute violates the Commerce Clause is decided. There's the stare decisis, the fact that the footnote is wrong, is irrelevant, because Heller takes that out. Absolutely. That is the position of the government, although I would like to note that I wouldn't go so far as to say the footnote is wrong. The footnote merely notes that, at that point in time, the Second Amendment, as far as this Court understood, did not extend a personal right to this firearm. Well, that's why I asked the question earlier, because I understood your opposing counsel to kind of suggest that there was, if I may use the term, kind of a penumbra of post-Heller analysis that affects the whole thinking of these other cases, and it isn't just the footnote that's involved. Your position is that's not correct. I think that's true. I think that Stewart was a Commerce Clause decision. It correctly concluded that Congress rationally decided there was enough of an effect on interstate commerce that it could exercise its powers to ban the possession of machine guns under the Commerce Clause. Whether or not it could do it under the Second Amendment is an entirely different issue. And I think that, in this case, the defendant's Commerce Clause argument improperly gloms the two together. This is a – well, could Congress constitutionally, consistent with the Commerce Clause, ban the possession of machine guns within 500 yards of a school? Consistent with the Commerce Clause, yes. I do believe it. And so what are we supposed to do with Lopez in that case, in that event? The impact of Lopez – because I believe that Congress could ban machine guns entirely, the choice of one particularly dangerous and unusual weapon, if it focused on that, I do believe would be within its powers under the Commerce Clause. Would the possession for a lawful purpose be possible for an inventor who was trying to develop a new method of making a rapid-fire weapon out of an existing semi-automatic rifle, tampering with the procedure in order to make it a fully automatic weapon? Would that be a lawful purpose for an inventor to have one of these things in his possession while he's working on it? I think not because of the unusual character of machine guns. There are ways within which such research and development can be done. The statute does include an exemption for legitimate possession by governmental bodies, for instance. It also includes an exemption for older machine guns. But just like for the same reasons that a tinker in his backyard can't create hand grenades or can't build bazookas, I think the machine guns fall within that same category. Those two are weapons, but I don't think there's any dispute that they do not fall within the scope of the Commerce Clause. Does the law require a criminal invent, a mens rea, if the inventor is tinkering around trying to invent something that he can sell to the government? The only mens rea required under the statute is knowing possession of a weapon that meets the definition of a machine gun. It doesn't have to be for an evil purpose. The government doesn't have to prove that there is any particular intent, although in this case the defendant was in his front yard shooting his machine gun at random in a residential neighborhood, which was not an awful purpose in Anchorage. This case is almost so much on all fours for a test case. I guess I have to ask, like they should have done in McCulloch v. Maryland, I gather this is not a contrived case between the government and your opposing counsel to have this issue go up to the Supreme Court? No, Your Honor, it's not. You know I have to ask. Two circuits have already held categorically that machine guns are not protected under Heller. This court has so held in two unpublished decisions. I would urge, given the fact that this precise issue has been decided twice and is still coming before the court, that perhaps it is time for a published opinion to issue. I still have a few moments. I would like to touch on the final argument that Henry makes, which is that the wrong standard was used in assessing the validity of the ban. He argues that the court should utilize a heightened scrutiny test, presumably thinking that if the court had done so that it would have concluded that the ban was unconstitutional. As Your Honor noted, the defendant skips an entire step here. If the court heightened scrutiny applies, there has to be an impact on the Second Amendment right to possess firearms. Here, as I've argued, there's not. So heightened scrutiny doesn't apply. We don't have to even get to the issue of what level of scrutiny, heightened or otherwise, if, arguendo, we were to find that the Second Amendment doesn't apply to this factual situation. Is that correct? That's absolutely correct. But I would suggest that even if, hypothetically, heightened scrutiny did apply, that in this case the regulation of machine guns passes muster. Because, first of all, the ban has to substantially burden the right to keep and bear arms for self-defense. There are plenty of alternative means to obtain a weapon that can be meaningfully used for self-defense. Taking away one particular kind of dangerous weapon does not significantly impact that Second Amendment right. As this court has recognized, even under heightened scrutiny, reasonable regulations as to time, place, and manner are permissible. And I'd suggest that's exactly what this regulation is. Unless the court has other questions. I think not. Would you put two minutes on the clock? Thank you. I'll just make a few points. And, Judge Smith, I can guarantee you this was not contrived because Mr. Henry is still in custody. And, more importantly to him, he's now a prohibited person from going to firearms. I mean no disrespect. I understand. We have to have a case in controversy here. And there have been instances in our history where that has not necessarily followed. That's what we've got. Certainly could be subject to continued litigation. But I'd also like to point out that the Stewart decision was based, Judge Fletcher, as you pointed out, on Lopez and on Morrison. And so, I mean, Lopez is still good law, and I think you make a good point in bringing that up. And finally, the last point I'd like to make, Your Honors, is to me the bottom line in Nordyke v. King is the quote, We hold that only regulations which substantially burden the right to keep and bear arms trigger heightened scrutiny under the Second Amendment. And in Mr. Henry's case, This is the vacated case you're citing? Yes. But I think the point is, and I think the quote is right, that regulations which burden the right to keep and bear arms come under heightened scrutiny. In this case, it was not just a burden on Mr. Henry. It was a complete bar for this gun that he made. He couldn't register it. There's no way he could possess it. And it wasn't just a burden. It was a bar. And I think that's a mistake. Thank you. Thank you. Thank both sides for very helpful arguments. The case of United States v. Henry is now submitted for decision.
judges: Goodwin, Fletcher, Smith